UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
----------------------------------------X
                                     :
TYRONE MINTON,                       :
                  Petitioner,   :
                                  :    10 Civ. 5140 (DLC)
          -v-                 :
                                  :    <u>OPINION & ORDER</u>
THOMAS LaVALLEY, Superintendent of  :
Great Meadow Corr. Fac.,           :
                                :
                    Respondent.  :
----------------------------------------X

APPEARANCES:

For Petitioner:

Tyrone Minton, <u>pro</u> <u>se</u>
#05-A-6244
Upstate Correctional Facility
309 Bare Hill Road
Malone, NY 12953

For Respondent:

Rither Alabre
Bronx District Attorney's Office
198 East 161st Street
Bronx, NY 10451

DENISE COTE, District Judge:

    Petitioner Tyrone Minton ("Minton") was convicted after a

jury trial in New York State Supreme Court of robbery in the

second degree, robbery in the third degree, grand larceny in the

fourth degree, and criminal possession of stolen property in the

fourth degree.  Minton, proceeding <u>pro</u> <u>se</u>, now brings this

petition for a writ of habeas corpus pursuant to 28 U.S.C.

§ 2254, challenging his conviction on the following grounds: (1) that the trial court erroneously granted the prosecution's reverse-<u>Batson</u> motion; (2) that the evidence was insufficient to support his convictions for robbery in the second and third degrees; (3) that he was denied due process of law and his constitutional right to present a defense when the trial court excluded a statement he made to police within minutes of his arrest; (4) that his constitutional right to a fair trial was violated by the cumulative effect of constitutional errors occurring at trial; and (5) that he was denied effective assistance of trial counsel.

The petition was referred to the Honorable James C. Francis IV for a report and recommendation on April 11, 2011.  Judge Francis's careful and thorough report ("Report"), filed on December 5, 2011, recommended that Minton's petition be denied in its entirety.  Minton's objections to the Report were received on January 10, 2012.  This Opinion adopts the Report's recommendation that the petition be dismissed.


<u>BACKGROUND</u>

The facts relevant to Minton's petition are set forth in the Report and summarized here.

I.   The Crime

On August 16, 2004, John Brackett ("Brackett") parked his truck outside of a store in the Bronx.  Upon exiting the store minutes later, Brackett was accosted by Minton, who took Brackett's keys and told Brackett to run.

As Brackett proceeded to look for help, he saw Minton pass by him in Brackett's truck.  Brackett haled a police cruiser. The officers instructed Brackett to ride with them in the backseat.  Brackett warned the officers that Minton was armed.

The officers soon located Brackett's truck, pulled the truck over, and removed and handcuffed Minton.  A search of the truck revealed numerous personal items belonging to Brackett, and a parking ticket issued to a black Toyota registered to a "Michelle Chambliss".  The address on the registration matched Minton's, and at trial an officer testified that he later learned Minton's wife's name was Michelle.  No gun was recovered from Minton or the truck.


II.   The Trial

On September 8, 2004, Minton was indicted on charges of robbery in the first degree, robbery in the second degree, robbery in the third degree, three counts of grand larceny in the fourth degree, and two counts of criminal possession in the

3

fifth degree.  Minton was tried before a jury in Bronx County
Supreme Court in September and October 2004.

     During jury selection, the trial court seated a juror
against whom Minton belatedly sought to exercise a peremptory
challenge.  Defense counsel claimed that he had made an error in
exercising his peremptories and had intended instead to strike
juror Carmen Cantillo ("Cantillo").  The prosecution made a
reverse-<u>Batson</u> motion, arguing that Minton had challenged three
Caucasian or Caucasian-looking jurors on the basis of race,
including Cantillo.  The trial court heard defense counsel's
race-neutral explanation for striking two jurors, considered the
prosecutor's response, and denied the prosecution's reverse-
<u>Batson</u> challenge as to the two stricken jurors.  The trial court
granted the reverse-<u>Batson</u> motion, however, as to Cantillo,
noting the suspicious timing of the strike and finding defense
counsel's race-neutral explanation not credible.  Cantillo was
seated on the jury.

     At trial, Minton presented the defense that he had rented
the truck from Brackett, as he had rented other vehicles in the
past.  On cross-examination of one of the arresting officers,
defense counsel sought to elicit the following statement made by
Minton as he was being placed in a police car:  "Why was I
arrested?  I borrowed the vehicle from this person. . . .  He
knows me.  He owes me money.  We used to smoke crack together."

4

The trial court sustained the prosecution's objection, ruling that the statement was hearsay.  The trial court rejected defense counsel's arguments that the statement was an excited utterance, or in the alternative, a declaration against penal interest.

During the jury's deliberations, one of the jurors, referred to in the transcript as "Ms. Iris", reported that she had been approached at a bus stop by a woman she recognized from the audience.  Ms. Iris also reported that she had been approached that morning while standing in the courthouse line by another person she had seen in the courtroom.  Ms. Iris had reported the contacts to the other jurors, one of whom had also been present at the bus stop when the interaction with the stranger occurred.

The trial court and counsel agreed to individually interview every member of the jury.  Each juror insisted that they could continue to be fair and impartial.  Defense counsel asked the trial court "whether it may be appropriate to tell Ms. Iris that it appears" as if the first person who approached her at the bus stop "was not one of [Minton's] family members."  The trial court noted that the second contact with Ms. Iris was by someone almost certainly associated with Minton, and that it would not help Minton to highlight the issue.  Defense counsel

responded:  "I'll follow the Court's direction.  I don't believe there's a need to address it any further."

Minton was convicted of all charges but first degree robbery.  On November 17, 2005, Minton was sentenced as a persistent violent felony offender to an aggregate term of 20 years to life in prison.  Minton appealed his conviction to the Appellate Division, First Department, which affirmed his conviction on June 3, 2008.  People v. Minton, 52 A.D.3d 234 (N.Y. App. Div., 1st Dep't 2008).  The New York Court of Appeals denied leave to appeal on September 11, 2008.  People v. Minton, 11 N.Y.3d 791 (N.Y. 2008).

Minton filed this petition on July 6, 2010.  On July 12, 2010, Minton's petition was stayed to permit him to exhaust certain claims he had asserted in a petition for a writ of error coram nobis in state court.  The stay was lifted on April 11, 2011, after Minton advised the Court by letter that the Appellate Division, First Department had permitted him to withdraw his petition for the writ of error coram nobis without prejudice.

DISCUSSION

Where a state court has reached the merits of a federal claim, habeas relief may not be granted unless the state court's decision was "contrary to or an unreasonable application of

clearly established federal law, as determined by the Supreme Court of the United States" or "was based on an unreasonable determination of facts in light of the evidence presented in the State court proceeding."  28 U.S.C. §§ 2254(d)(1), (d)(2). State court factual findings "shall be presumed to be correct," and the petitioner "shall have the burden of rebutting the presumption of correctness by clear and convincing evidence." 28 U.S.C. § 2254(e)(1).

A district court "may accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate judge."  28 U.S.C. § 636(b)(1)(C).  The court shall conduct a <u>de novo</u> review of those sections of a report to which a petitioner objects.  Minton objects to the Report's conclusions on two of his claims:  that the trial court improperly sustained the prosecution's reverse-<u>Batson</u> challenge, and that he was denied effective assistance of trial counsel. To accept those portions of the report to which no timely objection has been made, "a district court need only satisfy itself that there is no clear error on the face of the record." <u>Wingate v. Bloomberg</u>, No. 11 Civ. 188 (JPO), 2011 WL 5106009, at *1 (S.D.N.Y. Oct. 27, 2011) (citation omitted).

I.  The Prosecution's Reverse-Batson Motion

     Minton argues that the trial court violated his constitutional right to an impartial jury when it granted the prosecution's motion under Batson v. Kentucky, 476 U.S. 79 (1986), and seated Cantillo on the jury.  Minton's argument is not cognizable on habeas review, and therefore his petition's first claim is denied.

     "[T]he Constitution prohibits a criminal defendant from engaging in purposeful discrimination on the ground of race in the exercise of peremptory challenges."  Georgia v. McCollum, 505 U.S. 42, 59 (1992).  "An accusation by the Government that defense counsel has engaged in such discriminatory conduct has come be known as a 'reverse-Batson' challenge."  United States v. Thompson, 528 F.3d 110, 115 (2d Cir. 2008).

     When a defendant is deprived of the right to exercise a peremptory challenge, that action does not violate a defendant's federal rights.

> [P]eremptory challenges are not constitutionally
> protected fundamental rights; rather, they are but one
> state-created means to the constitutional end of an
> impartial jury and a fair trial. . . .  [T]he right to
> a peremptory challenge may be withheld altogether
> without impairing the constitutional guarantee of an
> impartial jury and a fair trial.

McCollum, 505 U.S. at 57.  "Because peremptory challenges are within the States' province to grant or withhold, the mistaken denial of a state-provided peremptory challenge does not,

without more, violate the Federal Constitution." <u>Rivera v.
Illinois</u>, 556 U.S. 148, 158 (2009).  Consequently, Minton's
claim arising from the decision to seat juror Cantillo must be
denied.  <u>See</u>, <u>e.g.</u>, <u>Nieves-Andino v. Conway</u>, No. 08 Civ. 5887
(NRB), 2010 WL 1685970, at *9 (S.D.N.Y. April 20, 2010); <u>Garcia
v. Graham</u>, No. 07 Civ. 3790 (JG), 2008 WL 2949383, at *7
(E.D.N.Y July 31, 2008); <u>Machiote v. Ercole</u>, No. 06 Civ. 13320
(DAB)(JCF), 2008 WL 169348, at *12 (S.D.N.Y. Jan. 18, 2008)
(collecting cases).


II. Sufficiency of the Evidence

     Minton next argues that his conviction on the second- and
third-degree robbery counts was based on legally insufficient
evidence.  The Report recommends that Minton's legal
insufficiency claim be denied; Minton has filed no objection to
this recommendation.  Having reviewed the Report for clear
error, its recommendation is adopted and Minton's legal
insufficiency claim is denied.


III.  Post-Arrest Statement

     Minton next claims that the trial court's decision not to
admit his exculpatory post-arrest statement violated his due
process right to a fair trial and his Sixth Amendment right to


                             9

present a defense.  Minton does not object to the Report's
recommendation that this claim be denied.[1]

The Report correctly concludes that Minton's post-arrest
statement[2] constitutes self-serving hearsay.  The Report also
correctly found that the only constitutional inquiry remaining
was whether this application of New York's hearsay rule was
arbitrary or disproportionate to the purposes it is designed to
serve.  As the Report found, Minton's exculpatory statement was
made under circumstances casting serious doubt upon its
reliability, and the application of New York's hearsay rule to
bar its admission cannot be considered arbitrary or
disproportionate to the hearsay rule's purpose of preventing the
admission of unreliable evidence at trial.  Minton's claim
related to the exclusion of his post-arrest statement is denied.


IV.  Cumulative Constitutional Errors

Minton's fourth claim is that his constitutional right to a
fair trial was violated by the cumulative effect of
constitutional errors at trial.  These alleged errors include

---

[1] The Report noted the respondent's argument that Minton's claim
is procedurally barred, but declined to address the procedural
issue because of the claim's failure on the merits.  <u>See Greiner
v. Wells</u>, 417 F.3d 305, 317 n.14 (2d Cir. 2005).

[2] "Why was I arrested?  I borrowed the vehicle from this person .
. . . He knows me.  He owes me money.  We used to smoke crack
together."

the admission of certain evidence offered by the prosecution, the trial court's handling of improper contacts between one or more persons associated with the Minton and the juror Ms. Iris, and the exclusion of Minton's post-arrest statement.  Minton does not object to the Report's conclusion that his claim of cumulative constitutional error is procedurally barred from habeas review by adequate and independent state grounds.

As the Report notes, Minton failed to comply with New York's contemporaneous objection rule.  C.P.L. § 470.05(2).  The Appellate Division expressly stated that Minton "did not preserve his argument that he was constitutionally entitled to introduce his exculpatory statement, his challenges to evidence elicited by the People, or his argument concerning the court's handling of an incident that occurred during jury deliberations," and declined to review these claims.  Minton, 52 A.D.3d at 235.[3]  Minton has demonstrated neither his actual innocence nor cause for the procedural default.  Similarly, Minton does not suggest that New York courts fail to

---

[3] The Appellate Division noted: "As an alternative holding, we also reject each of these claims on the merits."  The Second Circuit has directed federal courts to find that a habeas claim has been decided on the merits when the state court holds a claim to be "either unpreserved for appellate review or without merit."  Jimenez v. Walker, 458 F.3d 130, 146 (2d Cir. 2006) (emphasis supplied).  Here, by contrast, the Appellate Division stated plainly that its holding rested on a state procedural bar and that the claim was without merit.  It is therefore appropriate to dismiss the claim as procedurally barred.

systematically embrace the contemporaneous objection rule.  See
Garvey v. Duncan, 485 F.3d 709, 720 (2d Cir. 2007).  As such,
this claim is procedurally barred, and the Report's
recommendation that it be denied is adopted.


V.  Ineffective Assistance of Counsel

     Finally, Minton argues that his habeas petition should be
granted because he was denied effective assistance of counsel at
trial.  In his petition, Minton cites seven grounds for finding
that trial counsel was ineffective.  The Report concludes that
Minton cannot show that he received constitutionally ineffective
assistance with respect to any of the grounds cited.  Minton has
filed objections to the Report's conclusions in connection with
Minton's specific claims that trial counsel was ineffective for
failing (1) to challenge the prosecution's prima facie showing
during the argument of the reverse-Batson motion, (2) to object
to the admission of certain out-of-court statements, and (3) to
move for a trial order of dismissal.  The Report's
recommendation that Minton's ineffective assistance of counsel
claim be denied is adopted.

     The Supreme Court has established a two-part test for
evaluating claims of ineffective assistance of counsel.
Strickland v. Washington, 466 U.S. 668, 687 (1984); accord
Bennett v. United States, 663 F.3d 71, 84 (2d Cir. 2011).

                              12

"First, the defendant must show that counsel's performance was deficient.  This requires showing that counsel made errors so serious that counsel was not functioning as the 'counsel' guaranteed by the Sixth Amendment."  Strickland, 466 U.S. at 687.  "Second, the defendant must show that the deficient performance prejudiced the defense."  Id.  While the defendant must prove both deficient performance and prejudice, "there is no reason for a court deciding an ineffective assistance claim to approach the inquiry in the same order or even to address both components of the inquiry if the defendant makes an insufficient showing on one."  Id. at 697.

The Strickland standard is highly demanding, and rigorous. Bennett, 663 F.3d at 85.  With respect to the first prong, the court must "indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance," as "[t]here are countless ways to provide effective assistance in any given case."  Strickland, 466 U.S. at 689. Moreover, "[a]ctions and/or omissions taken by counsel for strategic purposes generally do not constitute ineffective assistance of counsel."  Gibbons v. Savage, 555 F.3d 112, 122 (2d Cir. 2009).  The performance inquiry examines the reasonableness of counsel's performance "from counsel's perspective at the time" and "considering all the circumstances."  Strickland, 466 U.S. at 688, 689.

The petitioner's burden with respect to prejudice is similarly stringent.  He must show a "reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different."  Id. at 694; accord United States v. Caracappa, 614 F.3d 30, 46 (2d Cir. 2010).  In applying this standard, "[a] reasonable probability is a probability sufficient to undermine confidence in the outcome." Strickland, 466 U.S. at 694; accord Wilson v. Mazzuca, 570 F.3d 490, 507 (2d Cir. 2009).  "[T]he ultimate focus of inquiry must be on the fundamental fairness of the proceeding whose result is being challenged."  Strickland, 466 U.S. at 696.

Minton's argument that trial counsel was ineffective in failing to challenge the prosecution's prima facie showing during the Batson inquiry is meritless.  As discussed in the Report, the trial court committed no error in granting the prosecution's reverse-Batson motion.

The Report correctly concludes that Minton was not prejudiced by trial counsel's failure to renew his motion for a trial order of dismissal after the defense case and after the conclusion of all the evidence.  The Appellate Division reviewed Minton's legal insufficiency and weight of evidence claims on the merits, and rejected them.  Minton, 52 A.D.3d at 234-35. The Report also correctly concludes that Minton was not prejudiced by his attorney's failure to object to certain out-

14

of-court statements offered into evidence by the prosecution,
given the strength of the other evidence against Minton.

Minton does not object to the Report's conclusion that the
remaining grounds cited by Minton do not support an ineffective
assistance claim.  The Report's analysis is not clearly
erroneous.  Accordingly, the Report's recommendation that
Minton's ineffective assistance claim be denied is adopted.

CONCLUSION

The petition for writ of habeas corpus is denied.  In
addition, the Court declines to issue a certificate of
appealability.  Minton has not made a substantial showing of a
denial of a federal right, and appellate review is therefore not
warranted.  Love v. McCray, 413 F.3d 192, 195 (2d Cir. 2005).
The Court also finds pursuant to 28 U.S.C. § 1915(a)(3) that any
appeal from this order would not be taken in good faith.
Coppedge v. United States, 369 U.S. 438, 445 (1962).  The Clerk
of Court shall dismiss this petition and close the case.

SO ORDERED:

Dated:     New York, New York
           May 10, 2012

                                    _____
                                    DENISE COTE
                                    United States District Judge

15

COPIES SENT TO:


Tyrone Minton                          Rither Alabre, Esq.
05-A-6244                              Bronx County District Attorney's
Upstate Correctional Facility          Office
309 Bare Hill Road                     198 East 161st Street
Malone, NY 12953                       Bronx, NY 10451